Jul. 15. 2009 12:31PM                                                     No. 1410   P. 21/39

STATE OF MICHIGAN
THIRD CIRCUIT COURT



| | CASE NO. | |
|---|---|---|
| **SUMMONS AND**<br>**RETURN OF SERVICE** | | 09-015639-NO |

| COURT<br>ADDRESS: 2 WOODWARD AVENUE, DETROIT, MICHIGAN 48226 | COURT<br>TELEPHONE NO. (313) 224- |
|---|---|

THIS CASE ASSIGNED TO JUDGE:        Robert J Colombo, Jr.              Bar Number: 25806

| PLAINTIFF | | DEFENDANT |
|---|---|---|
| White, Kevin | VS | Danner, Mike |

PLAINTIFF'S ATTORNEY

Posner, Gerald F.
(P-24269)
645 Griswold St Ste 1400
Detroit, MI 48226-4103
(313) 965-7784

| CASE FILING FEE | | JURY FEE | |
|---|---|---|---|
| Paid | | Paid | |
| ISSUED | THIS SUMMONS EXPIRES | DEPUTY COUNTY CLERK | |
| 06/25/2009 | 09/24/2009 | Ericka Chenault | |

*This summons is invalid unless served on or before its expiration date.        Cathy M. Garrett – Wayne County Clerk

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. YOU HAVE 21 DAYS after receiving this summons to file an answer with the court and serve a copy on the other party or to take other lawful action (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
   ☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
   ☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.
   ☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
   ☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.
   The docket number and assigned judge of the civil/domestic relations action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| 09-000754-CZ | Robert J Colombo, Jr. | 25806 |

The action   ☐ remains   ☐ is no longer   pending.

I declare that the complaint information above and attached is true to the best of my information, knowledge, and belief.

_____        _____
Date                                     Signature of attorney/plaintiff



**COMPLAINT IS STATED ON ATTACHED PAGES. EXHIBITS ARE ATTACHED IF REQUIRED BY (**

If you require special accommodations to use the court because of disabilities, please contact the court immediat

FORM NO. WC101
REV. (3-98)    MC 01 (10/97)    **SUMMONS AND RETURN OF SERVICE**    MCR 2.102(B)(11), MCR 2.104, MCR 2.107, M

**EXHIBIT**

**E**

Jul. 15. 2009 12:32PM                                                    No. 1410    P. 22/39

JURY FEE PAID
THIS DATE:
JUN 2 5 2009
BY:

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

KEVIN WHITE,

      Plaintiff,

v                                           Civil Action 09-        -NO

CITY OF DETROIT, a municipal
corporation, TOMMY BILLINGS,
JEB RUTLEDGE, ART MATTHEWS,
ST. ANDREWS HALL, ST. ANDREWS
SOCIETY OF DETROIT, MICHIGAN
HOLDINGS, LLC, MICHIGAN
LICENSES, LLC, URBAN ENTER-
TAINMENT, LLC, and MIKE
DANNER, jointly and severally,

      Defendants.

--------------------------------------------

POSNER, POSNER AND POSNER
By: Gerald F. Posner - P 24269
Attorneys for Plaintiff

--------------------------------------------

There is another civil action between these some of
these parties arising out of the same transaction  or
occurrence as alleged in this complaint pending in
this court, Case No. 09-000754-CZ, assigned to Judge
Robert J. Columbo, Jr.

Attorney for Plaintiff

## COMPLAINT AND DEMAND FOR JURY TRIAL

      NOW COMES plaintiff, by and through his attorneys, Posner,
Posner and Posner, and for his Complaint against the defendants
herein, jointly and severally, says as follows:

      1.    That plaintiff is a resident of Clinton Township,
Michigan.

6989s

2. That the amount in controversy exceeds the sum of Twenty-Five Thousand ($25,000.00) Dollars, and that this Court has jurisdiction over the subject matter herein.

3. That the incident in question took place in the City of Detroit, Wayne County, Michigan.

4. That the City of Detroit is a municipal corporation and operates a police department known as the Detroit Police Department.

5. That each individual defendant is, or at the time of the incident involved herein was, a resident of and/or conducting business in person in the City of Detroit, Wayne County, Michigan.

6. That defendant ST. ANDREWS HALL is an unknown legal entity which owns and/or operates a Hall known as St. Andrews Hall located at 431 E. Congress, Detroit, Michigan 48226.

7. That defendant ST. ANDREWS SOCIETY OF DETROIT is a Michigan corporation doing business in the City of Detroit, Wayne County, Michigan.

8. That defendant MICHIGAN HOLDINGS, LLC, is a Delaware corporation doing business in the City of Detroit, Wayne County, Michigan.

9. That defendant MICHIGAN LICENSES, LLC, is a Delaware corporation doing business in the City of Detroit, Wayne County, Michigan.

10. That defendant URBAN ENTERTAINMENT, LLC, is a Delaware corporation doing business in the City of Detroit, Wayne County, Michigan.

11. That defendants ST. ANDREWS HALL, ST. ANDREWS SOCIETY OF DETROIT, MICHIGAN HOLDINGS, LLC, MICHIGAN LICENSES,

6989s

-2-

LLC, and URBAN ENTERTAINMENT, LLC shall be collectively referred to as the St. Andrews defendants.

12. That at all times relevant hereto, one or more of the St. Andrews defendants owned and/or operated the Hall known as St. Andrews Hall.

13. That each of the St. Andrews defendants operated the Hall and its business by itself and by and through its employees, servants, and agents, and that at all times relevant hereto said employees, servants and agents were acting in the course of their employment and/or agency with the defendants and that each defendant is vicariously liable for the negligent and otherwise wrongful acts of said defendant's employees, servants and agents in the course of their employment and/or agency.

14. That on or about 7-1-06, defendants TOMMY BILLINGS and JEB RUTLEDGE, each of whom is being sued in his individual capacity, were police officers employed by the City of Detroit and the Detroit Police Department.

15. That on or about 7-1-06, defendant ART MATTHEWS, who is being sued in his individual capacity, was a police officer employed by the City of Detroit and the Detroit Police Department.

16. In the alternative, on or about 7-1-06, defendant ART MATTHEWS was a private security guard employed by the St. Andrews defendants, and was licensed by the State of Michigan as a security guard or, in the alternative, was not licensed by the State of Michigan.

17. That on or about 7-1-06, defendant MIKE DANNER was employed by the St. Andrews defendants and was head of its security.

6989s

-3-

18.   That at all times herein, the defendants were acting in concert and/or combination and/or conspiracy with each other and/or with other persons and/or officers.

19.   That at all times herein, the defendants were acting under color of state law.

20.   That at all times herein, the defendants were acting in bad faith.

21.   Further, that at all times herein, defendants had both the duty and the power to prevent or aid in the prevention of the commission of the wrongful acts pled herein against the plaintiff, but neglected or refused to do so.

22.   That at all times relevant hereto, defendants acted with gross negligence, with reckless disregard whether an injury would result to the plaintiff.

23.   That the intentional use or misuse of a badge of governmental authority for a purpose unauthorized by law is not the exercise of a governmental function.

24.   That police officers, carrying out their functions as police officers working for a city police department, are not authorized by law to punish a person in the process of making an investigation or arrest nor are they authorized to maliciously or sadistically inflict physical punishment or pain on a person; not to arrest and imprison a citizen without probable cause, and in bad faith; nor are they authorized to so maliciously act in an attempt to protect themselves or others from a valid charge and/or lawsuit from a citizen claiming assault and/or battery and/or violation of civil or constitutional rights and/or false arrest and/or imprisonment.

6989s

-4-

25.   That  police  officers,  carrying  out  their  functions as  police  officers  working  for  a  city  police  department,  are  not authorized  by  law  to  act  with  gross  negligence,  that  is,  to  engage in  conduct  so  reckless  as  to  demonstrate  a  substantial  lack  of concern  for  whether  an  injury  results.

26.   That  in  committing  the  acts  which  consitute  the  torts pled  herein,  each  of  the  defendant  police  officers  was  engaged  in a  nongovernmental  function  in  that  he  intentionally  used  or  mis-used  a  badge  of  governmental  authority  for  a  purpose  unauthorized by  law  and/or  intended  to  accomplish  illegally  what  could  not  be accomplished  legally;  to  attempt  to  cover  up  a  deliberate, unlawful,  malicious  and  sadistic  beating  of  that  person;  to attempt  to  protect  himself  and/or  other  officers  and/or  other persons  from  a  valid  charge  and/or  lawsuit  from  a  citizen  claim-ing  assault  and/or  battery  and/or  false  arrest  and/or  imprisonment and/or  violation  of  civil  and/or  constitutional  rights;  that each  of  the  defendant  officers  was  engaged  in  merely  ministerial-operational  acts;  further,  that  each  of  the  defendant  officers was  acting  in  bad  faith.

27.   On  July  1,  2006,  at  around  4:00  a.m.,  the  plaintiff was  sitting  on  the  steps  of  St.  Andrews  Hall  located  at  431  E. Congress  at  Brush  in  the  City  of  Detroit.

28.   Two  persons,  whose  identities  are  unknown  to  him, and/or  one  of  whom  was  defendant  Matthews,  pointed  a  gun  at  the plaintiff  without  identifying  themselves,  causing  plaintiff  to fear  for  his  life  and  to  be  in  fear  of  imminent  battery,  chased him  into  a  parking  structure  on  Congress  and  Brush,  and  assaulted him,  including  throwing  him  to  the  ground,  hitting  him  in  the

6989s

-5-

head with a blackjack or other instrument, kicking him in the eyes, mouth and head, and otherwise on his body, slamming him into a cement wall, and handcuffed him, thus effecting an arrest, without any probable cause, all causing severe and permanent injuries to the plaintiff.

29. That the two persons were two plainclothes and/or undercover policemen and/or law enforcement officers, or, in the alternative, were security guards for the St. Andrews defendants, either licensed or unlicensed.

30. That said persons used excessive, unreasonable and unnecessary force against the plaintiff when no such force was justified.

31. That the two persons had badges around their necks.

32. That the two persons radioed in, and Detroit Police officers, including defendants Billings and Rutledge, quickly came to the scene.

33. That investigation showed that there had been no break in at St. Andrews Hall.

34. That the two persons and/or police officers took the plaintiff's identification, wallet, and cigarettes, and that they finally allowed plaintiff to leave, but refused to give plaintiff back him cigarettes and his money, $460.00 in cash, unlawfully converting them to their own use.

35. That defendants Billings and Rutledge failed, refused and/or neglected to obtain and record proper identification of the two persons who assaulted and arrested/handcuffed the plaintiff, putting down on their logs only that one person was Art Matthews, a black male of 36, and allegedly a security guard for

6989s

-6-

St. Andrews, without any further identifying information, and recording nothing at all about the second individual.

36. That said defendant officers did so in reckless disregard of the plaintiff's rights, and did so with the intent and purpose of protecting a fellow law enforcement officer or guard.

37. That the St. Andrews defendants later denied that they had any security personnel named Art Matthews.

38. That the defendant officers and the two persons committing the acts against the plaintiff committed an assault and battery, false arrest, and false imprisonment against the plaintiff, violated plaintiff's civil and constitutional rights, acted with gross negligence, and further converted plaintiff's property.

39. That the defendant officers and the two persons committing the acts against the plaintiff fraudulently concealed the existence of a cause of action against the persons and officers and concealed the identities of persons who were liable for the claims of plaintiff by concealing the identities of the persons involved and covering up evidence.

40. That the St. Andrews defendants fraudulently concealed the existence of a cause of action against themselves as well as the persons involved and concealed the identities of persons who were liable for the claims of plaintiff by wrongfully denying that the persons involved were St. Andrews security personnel and concealing the identities of the persons involved and covering up evidence.

41. That in an attempt to ascertain the names of the officers and/or other persons involved so that plaintiff would be

6989s

-7-

able to file a legal action against them for assault and battery, false arrest, false imprisonment, conversion, violation of his civil rights, and any other action which his attorneys deemed proper, plaintiff directed three Freedom of Information Act requests to defendant City of Detroit to obtain all records and documents which would name and identify all of the police officers and other individuals involved, but that defendant City of Detroit wrongfully failed to properly and fully respond to the FOIA requests, and even failed to timely turn over the log run sheets and other information which would have given the plaintiff timely information to file suit.

   a.   On July 24, 2006, plaintiff, through his attor-
        neys, made a request under the FOIA to the
        defendant for records.

   b.   On July 28, 2006, defendant first granted the
        request but on August 15, 2006, defendant
        denied the request, and stated that an active
        investigation was in progress. The defendant
        further stated that the request could be
        renewed in the future.

   c.   The defendant even failed to turn over the run
        sheet and/or other records not exempt from
        production, and omitted material information.

   d.   On April 3, 2007, plaintiff, through his
        attorneys, made his second request under the
        FOIA to the defendant for records.

   e.   On May 7, 2007, defendant denied the request,
        and stated that an active investigation was
        still in progress. The defendant again stated
        that the request could be renewed in the future.

   f.   Once again, defendant even failed to turn over
        the run sheet and/or other records not exempt
        from production, and omitted material infor-
        mation.

   g.   On June 28, 2008, plaintiff, through his
        attorneys, made his third request under the
        FOIA to the defendant for records.

6989s

-8-

h.   On August 28, 2008, defendant denied the
     request, and stated that it was its "under-
     standing" that the records were investigatory
     records that fall within the term "personnel
     records of law enforcement agencies", and
     attached only the plaintiff's own complaint
     about the incident.

i.   Once again, defendant even failed to turn over
     the run sheet and/or other records not exempt
     from production, and omitted material infor-
     mation.

j.   That without disclosure of such records, the
     plaintiff was unable to file suit against
     officers and others and was unable to vindicate
     his legal rights, both federal and state.

k.   That defendant's refusal to supply such
     records, and particularly the portions of
     records which would identify the officers and
     other individuals involved in the incident with
     the plaintiff, was wrongful, arbitrary and
     capricious.

l.   That on 1-9-09, plaintiff filed suit against
     defendant City of Detroit under the FOIA in the
     Wayne County Circuit Court, Case No. 09-000754-
     CZ.

m.   That by order entered on 2-9-09, the Court, the
     Hon. Robert J. Columbo, Jr., ordered defendant
     to turn over everything pertaining to the inci-
     dent and investigation to plaintiff by 2-20-09.

n.   That defendant turned over information as a
     result of that court order which should have
     been turned over earlier and timely, even years
     earlier.

o.   That it was only upon receiving that information
     that plaintiff learned sufficient information to
     file this lawsuit.

p.   That even despite the above court order, the
     City of Detroit omitted other information and
     did not fully comply with the court's order.

     42.   That by the time the defendant City of Detroit turned

over the information to the plaintiff, the time had expired to

timely file a lawsuit against any defendants, including the

6989s

employers of any defendants, for state law causes of action for assault and battery, false arrest, and false imprisonment.

43. That defendant City of Detroit fraudulently concealed the existence of a cause of action and concealed the identities of persons who were liable for the claims of plaintiff by concealing the identities of the persons involved and covering up evidence, and omitting material information when it had a legal duty to make a disclosure.

44. That the City of Detroit, the defendant officers and the two persons committing the acts against the plaintiff violated the plaintiff's constitutional rights, and plaintiff's rights under 42 USC §1983, by denying plaintiff's right of effective and meaningful access to the courts in that those actions foreclosed plaintiff from learning the identities of the proper defendants and from filing suit in state court and rendered ineffective any state court remedy plaintiff would have had.

45. As a proximate result of defendants' actions, plaintiff's filing of such a state court action would be futile and meaningless because:

a. Under the law of the State of Michigan, there is no civil cause of action for spoliation of evidence that could be brought agaisnt the City of Detroit or its police department.

b. The plaintiff could not bring an action for mere negligence in the investigation because under Michigan law, it could be held that police owe no duty to any one particular individual in performing their duties and such an action could be deemed frivolous and subject plaintiff to sanctions by the court.

c. The plaintiff does not have sufficient information to file a "John Doe" suit in state court because the investigation was completed and tampered with by defendants in such a manner that the responsible persons are not able to be identified.

6989s

-10-

    d.    Further, as a matter of Michigan law, the filing of a "John Doe" lawsuit does not toll the runnning of the statute of limitations, and any amendment which later substitutes the true names of the defendants for the John Doe defendants does not relate back to the filing of the original complaint.

    e.    Michigan does not have a tolling provision, either common law or statutory, which will operate to save plaintiff's action if the identity of the persons committing the wrongful acts against the plaintiff is discovered later. See, Trentadue v Buckler Lawn Sprinkler, 479 Mich 378; 738 NW2d 664 (2007).

    f.    That applicable statutes of limitation have expired on plaintiff's state law claims, barring those claims.

    g.    Plaintiff's filing of a state court action would be futile and meaningless because of other reasons, not specifically set forth above.

    h.    Given the above facts, there is no state court remedy, and particularly against certain persons actually responsible for plaintiff's injuries and damages, available to plaintiff for damages.

46. As a proximate result of defendants' actions, plaintiff has be foreclosed from filing a viable state court action for state law causes of action and seeking a meaningful state court remedy against the proper persons and defendants, and also, possibly against some or all of the instant defendants should this court find parts or all of plaintiff's claims herein barred, and such an action would be futile, given the missing evidence, the expired statutes of limitation, the lack of evidence, destroyed information, the lack of the identities of the suspects, and other pre-filing abuses by defendants.

47. That plaintiff had a right to be protected from intentional, wanton, willful, malicious, purposeful, deliberate, grossly negligent, recklessly indifferent, and wrongful conduct

6989s

-11-

by the defendants which conduct resulted in physical and mental
injuries to the plaintiff and in violation of plaintiff's civil
rights.

48.  Defendants had a duty toward the plaintiff under the
United States Constitution and the federal civil rights laws,
specifically including 42 USC § 1983, to refrain from acting or
failing to act so as to violate plaintiff's civil rights.

49.  Defendants breached those duties to the plaintiff
and violated plaintiff's civil rights by the acts and omissions
and failures to act, as pled herein.

50.  That it was the policy, practice, custom and usage
of defendant City to encourage violations of the civil rights of
persons by its conduct and inaction which was grossly negligent
and/or deliberately indifferent to the civil rights of persons
and to constitutional violations by its officers, which conduct
and inaction included, but is not limited to:

(a)  Failure to correct unconstitutional conditions and
     practices.

(b)  Failure to completely and properly investigate all
     prior complaints of police violence against prison-
     ers and citizens.

(c)  Failure to promulgate and enforce regulations regard-
     ing the proper treatment of prisoners and citizens by
     officers, and for the intervention by officers who
     witness the mistreatment of persons at the hands of
     other officers and have the power to prevent same.

(d)  Failure to take proper disciplinary action against
     officers who had mistreated prisoners and/or
     citizens.

(e)  Allowing a pervasive and established pattern of con-
     stitutional violations to become a de facto policy
     by failing to take action against same or to prevent
     same.

6989s

-12-

(f)  Inadequate, grossly inadequate, or non-existent
     training and supervision of officers, including
     training and supervision with regard to the use of
     excessive force and with regard to the reporting of
     conduct of other officers or law enforcement
     personnel.

(g)  Failing to give adequate and proper psychological
     tests to prospective officers.

(h)  Failing to give periodic adequate and proper psycho-
     logical tests to officers in order to relieve offi-
     cers found to be psychologically unfit or give them
     adequate treatment.

(i)  Retaining persons as officers even after their
     negative employment history, background, and/or
     fitness for duty was discovered and/or should have
     been discovered.

(j)  Failing to respond properly, adequately, promptly
     and timely to Freedom of Information Act requests.

    51.  That the policy, practice, custom and usage of de-
fendant City, and its conduct and inaction, was a proximate cause
of the violation of plaintiff's civil rights and of the injuries
and damages to the plaintiff.

    52.  That the plaintiff had a right to be protected from
the wrongful conduct by defendant City, as well as the by the
other defendants, which conduct resulted in injuries and damages
to the plaintiff.

    53.  That plaintiff had the following rights, privileges
and/or immunities, among others, guaranteed him under the United
States Constitution and laws of the United States:

(a)  the right to due process of law;

(b)  the right to meaningful and effective access to the
     courts;

(c)  the freedom from illegal and/or unreasonable seizure
     of his person and of his property;

6989s

-13-

(d)  the freedom from arbitrary and unreasonable inter-
ference by the police;

(e)  the freedom from unnecessary force;

(f)  the freedom to be secure in one's person;

(g)  the freedom from being unlawfully assaulted and/or
beaten;

(h)  the freedom from unnecessary suffering;

(i)  the freedom from unnecessary and wanton infliction
of pain;

(j)  the right to equal protection of the laws;  and

(k)  the right to liberty.

54.    That by reason of the wrongful conduct by defendants,
plaintiff was deprived of the rights, privileges and/or immunities
guaranteed him by the United States Constitution and laws as set
forth above.

55.    That the wrongful conduct by defendants constituted
a violation of the civil rights of plaintiff and a violation of
42 USC §1983.

56.    That the defendants, acting under color of law and
right, by said wrongful conduct, deprived plaintiff of the civil
rights guaranteed him by 42 USC §1983, of the laws of the United
States in effect at the time of the injuries inflicted upon the
plaintiff by said defendants, said statute reading as follows:

> "Every person who, under color of any statute, ordi-
> nance, regulation, custom or usage, or any State or
> Territory, subjects or causes to be subjected, any
> citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges or immunities secured by the Con-
> stitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or
> other proper proceeding for redress."

6989s

-14-

57. That the St. Andrews defendants had a duty toward the plaintiff not to act in a manner which was negligent and/or grossly negligent, but breached those duties to the plaintiff by the acts and omissions and failures to act, as pled herein, as well as in other manners, including but not limited to:

(a) Negligent hiring of security guards and security personnel, including failing to adequately and properly investigate the employment history, background and fitness of persons it hired and failing to give adequate and proper psychological tests to prospective security guards and security personnel.

(b) Inadequate, grossly inadequate, or non-existent training and supervision of security guards and security personnel, including training and super-vision with regard to the use of excessive force and with regard to the use of firearms.

(c) Failing to hire persons as security guards and security personnel who were both properly trained and were licensed by the State of Michigan.

(d) Allowing the persons it hired and used as security guards and security personnel to carry and use weapons and/or allowing them to do so without proper licensing and training.

(e) Failing to give periodic adequate and proper psycho-logical tests to security guards and security per-sonnel in order to relieve those found to be psycho-logically unfit or give them adequate treatment.

(f) Retaining persons as security guards and security personnel even after their negative employment history, background, and/or fitness for duty was discovered and/or should have been discovered.

(j) Failing to keep proper records concerning persons hired or used as security guards and security personnel.

(k) Allowing their employees to give false and/or incomplete information to the police.

(l) Failure to completely and properly investigate all prior complaints of violence against persons by their security guards and security personnel, and failure to take proper disciplinary action against those who had mistreated citizens.

6989s

-15-

(m)  Allowing a pervasive and established pattern of constitutional violations to become a de facto policy by failing to take action against same or to prevent same.

58.  That the negligence of the St. Andrews defendants, as well as the policy, practice, custom and usage of those defendants, and the conduct and inaction of those defendants, was a proximate cause of both the violation of plaintiff's civil rights, and of the injuries and damages to the plaintiff.

59.  That as a direct and proximate result of all of the the wrongful conduct of defendants, including the violations of plaintiff's civil rights as herein alleged, plaintiff sustained serious and permanent injuries to his entire body and person, both physical and mental injuries, including but not limited to injuries to his head, face, eyes, vision, lip, jaw, teeth, closed head trauma, nose, face, eyes and vision, and other physical and mental injuries, and aggravation of any and all pre-existing conditions.

60.  That as a direct and proximate result of all of the the wrongful conduct of defendants, including the violations of plaintiff's civil rights as herein alleged, plaintiff sustained damages as a result of the conversion of his personal property, entitling him to treble damages and actual attorney fees and costs under the Michigan conversion statute.

61.  Furthermore, plaintiff sustained damages consisting of the loss of the value of any cause of action lost as a result of the wrongful conduct of defendants, including the violations of plaintiff's civil rights as herein alleged.

6989s

62.   That plaintiff's injuries are continuing and are permanent in nature.

63.   That as a direct and proximate result of said wrongful conduct, plaintiff was forced to undergo, and will in the future continue to undergo medical treatment and care, was forced, and in the future will continue to be forced, to expend large sums of money and incur bills for hospital and medical treatment, and for medicines, x-rays, testing and drugs.

64.   That as a direct and proximate result of said wrongful conduct, plaintiff has suffered, and will in the future continue to suffer, great pain and suffering, mental anguish, fright and shock, denial of social pleasures and enjoyments, embarrassment, and humiliation.

65.   That as a direct and proximate result of the intentional, wanton, willful, malicious, and oppressive manner in which said wrongful conduct was committed, plaintiff suffered, and will in the future continue to suffer, additional great mental anguish, embarrassment, outrage, fright and shock, mortification, indignity and humiliation.

66.   That as a direct and proximate result of said wrongful conduct, plaintiff has suffered, and will in the future continue to suffer, great loss of earnings and earning capacity, and that plaintiff's earning capacity has been and will in the future continue to be greatly and/or permanently impaired.

67.   That as a direct and proximate result of said wrong-wrongful conduct, plaintiff incurred substantial liabilities for attorney fees.

6989s

-17-

WHEREFORE, plaintiff asks judgment for compensatory dam-
ages as well as exemplary damages for whatever amount plaintiff
is found to be entitled against the defendants, jointly and sever-
ally, plus punitive damages against the individual defendants in
the amount of Two Million ($2,000,000.00) Dollars, plus actual
reasonable attorney fees pursuant to 42 USC § 1988, plus statutory
interest, court costs and attorney fees, plus treble damages and
actual attorney fees and costs pursuant to Michigan's conversion
statute.

### PLAINTIFF DEMANDS TRIAL BY JURY

POSNER, POSNER AND POSNER

By: Gerald F. Posner ~ P 24269
Attorneys for Plaintiff
1400 Penobscot Building
Detroit, Michigan 48226
965-7784

6989s

-18-